T.C. Memo. 2006-189

UNITED STATES TAX COURT

HOYT W. AND BARBARA D. YOUNG, ET AL.,[1] Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 17646-83, 4201-84,    Filed September 6, 2006.
           22783-85, 30010-85,
           35608-86, 19464-92,
             621-94,  9532-94.

Joe Alfred Izen, Jr., for petitioners in docket Nos. 4201-84, 22783-85, 30010-85, and 35608-86.

Robert Alan Jones, for petitioners in docket Nos. 17646-83, 19464-92, 621-94, and 9532-94.

Henry E. O'Neill and Peter R. Hochman, for respondent.

[1] Cases of the following petitioners have been consolidated for purposes of this opinion:  Hoyt W. and Barbara D. Young, docket Nos. 4201-84, 22783-85, and 30010-85; Ronald L. and Mattie L. Alverson, docket No. 17646-83; Norman W. and Barbara L. Adair, docket No. 35608-86; Willis F. and Marie D. McComas, docket No. 19464-92; Wesley Armand and Sherry Lynn Cacia Baughman, docket No. 621-94; and Norman A. and Irene Cerasoli, docket No. 9532-94.

CONTENTS

Page

Background . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Discussion . . . . . . . . . . . . . . . . . . . . . . . . 17

I.    Introduction . . . . . . . . . . . . . . . . . . . . . 17
      A.   Overview of Section 7430 . . . . . . . . . . . . 17
      B.   Amplification of September 8, 2005 Order . . . . . 19
           1.   Inapplicability of Section 6673 . . . . . . . 20
           2.   Real Parties in Interest . . . . . . . . . . 21

II.   Entitlement to Relief Under Section 7430 . . . . . . . . 22
      A.   Jones Fee Request--Jurisdictional Issue . . . . . 22
           1.   Respondent's Position . . . . . . . . . . . 22
           2.   Analysis . . . . . . . . . . . . . . . . . . 23
                a.   September 8, 2005 Order . . . . . . . . 23
                b.   Recent Ninth Circuit Cases . . . . . . 24
                c.   Conclusion . . . . . . . . . . . . . . 25
      B.   Paid or Incurred Requirement . . . . . . . . . . 25
      C.   Substantial Justification Defense . . . . . . . . 27
      D.   Other Threshold Requirements . . . . . . . . . . 28
      E.   Conclusion . . . . . . . . . . . . . . . . . . . 28

III.  Amounts of Awards . . . . . . . . . . . . . . . . . . . 28
      A.   Overview . . . . . . . . . . . . . . . . . . . . 28
      B.   Reasonable Attorney's Fee:  The Lodestar . . . . . 28
           1.   In General . . . . . . . . . . . . . . . . . 28
           2.   Hours Reasonably Expended . . . . . . . . . 29
                a.   The Limited Success Factor . . . . . . 29
                b.   Hours Relating to the Issue of
                     Attorney's Fees . . . . . . . . . . . . 30
           3.   Reasonable Hourly Rate Under Section 7430 . . 31
      C.   Hours Reasonably Expended--Izen Fee Request . . . 31
           1.   Preliminary Issues . . . . . . . . . . . . . 31
                a.   Scope of Representation We May Consider . 31
                b.   Discrepancies Between Fee Request and
                     Alleged Invoice . . . . . . . . . . . . 34
           2.   Adjustments to Hours Claimed . . . . . . . . 36
                a.   Hours Relating to "Intervention" . . . . 37
                b.   Hours Subject to "Billing Judgment"
                     Inference . . . . . . . . . . . . . . . 40
                c.   Review of Other Parties' Nonsubstantive
                     Filings . . . . . . . . . . . . . . . . 42
                d.   Representation Issues . . . . . . . . . 43
                e.   Matters Relating to Remand Proceedings . 43
                f.   Duplicate Entries . . . . . . . . . . . 44

          g.     Separately Claimed Fee Request Hours  . .   44
          h.     Miscellaneous Additional Adjustments   . .   45
     3.   Summary . . . . . . . . . . . . . . . . . . .   46
D.   Hours Reasonably Expended--Jones Fee Request  . . .   46
     1.   Reliability of Documentation . . . . . . . . .   46
     2.   Specific Time Entries  . . . . . . . . . . . .   48
          a.     In General  . . . . . . . . . . . . . .   48
          b.     Dismissal and Recertification . . . . .   48
          c.     The Cerasolis' Motion To Intervene  . .   49
          d.     Pre- and Post-Appeal Tax Court Filings  .   50
          e.     Miscellaneous Additional Adjustments   . .   51
     3.   Summary . . . . . . . . . . . . . . . . . . .   51
E.   Calculation of Lodestars . . . . . . . . . . . . .   51
     1.   Izen Fee Request . . . . . . . . . . . . . . .   51
          a.     2000 and 2001 . . . . . . . . . . . . .   51
          b.     2002 through 2005  . . . . . . . . . . .   52
          c.     2006  . . . . . . . . . . . . . . . . .   52
          d.     Total . . . . . . . . . . . . . . . . .   52
     2.   Jones Fee Request  . . . . . . . . . . . . . .   53
          a.     2000 and 2001 . . . . . . . . . . . . .   53
          b.     2002 and 2003  . . . . . . . . . . . . .   53
          c.     Total . . . . . . . . . . . . . . . . .   54
F.   Adjustment to Izen's Fees-on-Fees Lodestar To
     Reflect Limited Success . . . . . . . . . . . . . .   54
G.   Reasonable Expenses  . . . . . . . . . . . . . . .   55
     1.   Izen Expense Request  . . . . . . . . . . . .   55
     2.   Jones Expense Request  . . . . . . . . . . . .   56
H.   Amounts Paid or Incurred by Eligible Persons  . . .   57
     1.   Izen Fee Request . . . . . . . . . . . . . . .   57
          a.     Indirect Payments . . . . . . . . . . .   57
          b.     Indirect Obligations  . . . . . . . . .   57
          c.     Direct Payments . . . . . . . . . . . .   58
          d.     Direct Obligations--Fixed Amounts . . . .   59
          e.     Direct Obligations--Additional Amounts  .   60
     2.   Jones Fee Request  . . . . . . . . . . . . . .   62
I.   Summary . . . . . . . . . . . . . . . . . . . . . .   63

Appendix--September 8, 2005 Order . . . . . . . . . . . .   64

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  These cases are part of the Kersting tax

shelter litigation.  In this opinion, we consider motions for

attorney's fees and expenses relating to services provided by Joe

Alfred Izen, Jr. (Izen) and Robert Alan Jones (Jones) in connection with the appeal of Dixon v. Commissioner, T.C. Memo. 1999-101, supplemented by T.C. Memo. 2000-116, revd. and remanded 316 F.3d 1041 (9th Cir. 2003). Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following discussion is based on the existing record and additional information submitted by the parties in connection with the fee requests. We have not found it necessary to hold an evidentiary hearing. See Rule 232(a)(2).

Petitioners Hoyt and Barbara Young (the Youngs) are test case petitioners in the Kersting tax shelter litigation. The remaining petitioners herein (the Adairs, Alversons, McComases, Baughmans, and Cerasolis) are nontest case petitioners whose cases were consolidated with the test cases for purposes of the attorney misconduct phase of this litigation, discussed below. The Youngs and the Adairs (collectively, the Izen petitioners) are represented by Izen; the remaining petitioners herein (collectively, the Jones petitioners) are represented by Jones.

The Kersting tax shelter litigation arose from respondent's disallowance of interest deductions claimed by participants in various tax shelter programs promoted by Henry F.K. Kersting

(Kersting) during the late 1970s through the 1980s.  Under the test case procedure, nontest case petitioners in more than 1,000 docketed cases entered into "piggyback" agreements in which they agreed that their cases would be resolved in accordance with the outcome of the test cases.[2]

The test cases initially consisted of 14 docketed cases of eight petitioners, six of whom (including the Youngs) were represented by Izen at trial.  Kersting, who had retained Izen to represent those six test case petitioners, initially paid Izen's fees, either directly or through alter ego corporations.

Following a 3-week trial, the Court sustained virtually all of respondent's determinations in each of the test cases.  See Dixon v. Commissioner, T.C. Memo. 1991-614 (Dixon II).[3]  However, on June 9, 1992, respondent notified the Court that respondent's management had just discovered that, prior to the trial of the test cases, respondent's trial attorney, Kenneth W. McWade, and McWade's supervisor, Honolulu District Counsel William A. Sims,

---

[2] Upon the final disposition of the test cases, the relatively few nontest case petitioners who did not enter into piggyback agreements will generally be ordered to show cause why their cases should not be decided in the same manner as the test cases.  See, e.g., Lombardo v. Commissioner, 99 T.C. 342, 343 (1992), affd. on other grounds sub nom. Davies v. Commissioner, 68 F.3d 1129 (9th Cir. 1995).

[3] Prior to the trial of the test cases, the Court had issued an opinion rejecting the test case petitioners' arguments that certain evidence should be suppressed and that the burden of proof should be shifted to respondent.  See Dixon v. Commissioner, 90 T.C. 237 (1988) (Dixon I).

had entered into secret settlement agreements with the two test case petitioners not represented by Izen (the Thompsons and the Cravenses). Respondent asked the Court to conduct an evidentiary hearing to determine whether the previously undisclosed agreements had affected the trial of the test cases or the opinion of the Court. The Court denied respondent's request for an evidentiary hearing, entered decisions giving effect to the Thompson and Cravens settlements, and reentered or allowed to stand the decisions sustaining respondent's determinations against the other test case petitioners.

Around this time, Kersting organized, and initially administered, a fund (hereafter, the "Defense Fund" or "Fund") through which nontest case petitioners shared the further costs of the test case litigation. At various times, more than 300 nontest case petitioners contributed to the Defense Fund.

The test case petitioners (other than the Thompsons and the Cravenses) appealed to the Court of Appeals for the Ninth Circuit. The Court of Appeals, citing Arizona v. Fulminante, 499 U.S. 279, 309 (1991), stated:

> We cannot determine from this record whether the extent of misconduct rises to the level of a structural defect voiding the judgment as fundamentally unfair, or whether, despite the government's misconduct, the judgment can be upheld as harmless error. [DuFresne v. Commissioner, 26 F.3d 105, 107 (9th Cir. 1994) (per curiam), vacating Dixon v. Commissioner, T.C. Memo. 1991-614.]

The Court of Appeals vacated this Court's decisions in the test cases and remanded them for "an evidentiary hearing to determine the full extent of the admitted wrong done by the government trial lawyers."  Id.  In response to the direction of the Court of Appeals to consider on the merits all motions of intervention filed by interested parties, this Court ordered that the cases of 10 nontest case petitioners (hereafter, the participating nontest case petitioners), including the Adairs and the four Jones petitioners,[4] be consolidated with the remaining test cases for purposes of the evidentiary hearing.

On the basis of the record developed at the evidentiary hearing, the Court held that the misconduct of the Government attorneys in the trial of the test cases did not cause a structural defect in the trial but rather resulted in harmless error.  See Dixon v. Commissioner, T.C. Memo. 1999-101 (Dixon III).  However, the Court imposed sanctions against respondent, holding that Kersting program participants who had not had final decisions entered in their cases would be relieved of liability for (1) the interest component of the addition to tax for negligence under former section 6653(a), and (2) the incremental interest attributable to the increased rate prescribed in former section 6621(c).

---

[4] The remaining five participating nontest case petitioners have been represented by Robert Patrick Sticht (Sticht).

After the issuance of Dixon III, Izen and Jones filed joint motions for attorney's fees and costs (the Izen/Jones request). The Izen/Jones request relied primarily on sections 7430 (authorizing fee awards for certain prevailing taxpayers) and 6673(a)(2)(B) (relating to misconduct of the Commissioner's attorneys in Tax Court proceedings).[5] The Court ordered the movants to submit documentation pertaining to fees and expenses incurred commencing June 10, 1992 (i.e., the day after the Court learned of the misconduct by the Government attorneys). In Dixon v. Commissioner, T.C. Memo. 2000-116 (Dixon IV), the Court rejected the Izen/Jones request insofar as it relied on section 7430, on the ground that the movants had not substantially prevailed in the proceedings as required by section 7430(c)(4)(A)(i). The Court did award a portion of the claimed fees and expenses under section 6673(a)(2)(B).

The Court entered decisions in the remaining test cases, and on June 29, 2000, Izen filed notices of appeal on behalf of the test case petitioners (the Dixons, DuFresnes, Hongsermeiers, Owenses, and Youngs).[6] See sec. 7483. Izen and Jones also attempted to file notices of appeal on behalf of their respective

---

[5] Sticht subsequently filed his own motion for sanctions (including attorney's fees and costs), which we effectively treated as having been premised on sec. 6673(a)(2)(B).

[6] Ralph J. Rina, the other test case petitioner initially represented by Izen, had settled his case in 1995.

participating nontest case petitioner clients and numerous other nontest case petitioners labeled "intervenors". Because the Court had not entered decisions in any of the nontest cases (pending final disposition of the test cases), the Court rejected the notices of appeal filed on behalf of nontest case petitioners. However, in response to a motion filed by Attorney Sticht, see supra note 4, the Court certified for interlocutory appeal certain orders it had issued in the participating nontest case petitioners' cases in connection with the evidentiary hearing, thereby enabling those petitioners to apply to the Court of Appeals for immediate review. See sec. 7482(a)(2)(A).

On the basis of this Court's certification order, Izen and Jones (as well as Sticht) continued their efforts on behalf of nontest case petitioners in the Court of Appeals. Izen submitted to that court a "Notice of Appeal of Certain Intervenors" bearing docket No. 00-70858 (the docket number the Court of Appeals had assigned to the test case appeal). Izen purported to submit that document on behalf of not only the Adairs, but also nontest case petitioners in more than 450 docketed cases who had not participated in the evidentiary hearing and whose cases therefore were not included in the certification order. Jones submitted "notices of appeal" on behalf of the four Jones petitioners, which the Court of Appeals construed as petitions for permission

to appeal under section 7482(a)(2) (i.e., applications for interlocutory review).

By order dated August 30, 2000, the Court of Appeals denied the Jones petitioners' initial applications for interlocutory review as untimely. In a subsequent order addressing a motion for reconsideration by the Jones petitioners, the Court of Appeals suggested that they request the Tax Court to recertify their cases for interlocutory appeal. They did so, and we recertified the cases by order dated January 23, 2001. The Court of Appeals granted the Jones petitioners' ensuing applications for interlocutory review on March 20, 2001, and ultimately assigned docket Nos. 01-70638, 01-70639, 01-70640, and 01-70641 to their cases.

On January 30, 2001, the Court of Appeals assigned docket No. 01-70155 to the Adair et al. matter (hereafter, the Adair appeal). On March 22, 2001, the Court of Appeals issued an order to show cause why the Adair appeal should not be dismissed for lack of jurisdiction. Describing Izen's initial filing as "confusing in several respects", the Court of Appeals apparently surmised that Izen was attempting to establish the right of nontest case petitioners to appeal the decisions in the test cases (in their self-proclaimed capacity as "intervenors") rather than seeking permission to appeal the orders this Court had certified for interlocutory appeal. On the same day, the Court

of Appeals stayed the proceedings in docket No. 00-70858 (the test case appeal) pending resolution of the various nontest case matters. Izen and respondent contested the jurisdictional issue in the Adair appeal over the next several months.

In an order dated May 10, 2001, the Court of Appeals decreed that the Jones petitioners' interlocutory appeals (as well as those filed by Sticht) "shall be held in abeyance pending resolution of the appeal in no. 00-70858" (the test case appeal). On November 20, 2001, the Court of Appeals issued a similar order in the Adair appeal. The next day, the Court of Appeals lifted the stay of proceedings in the test case appeal.

Meanwhile, in January 2001, the Defense Fund, acting through a five-person "steering committee" following Kersting's death in March 2000, had retained attorney Michael Louis Minns (Minns) to replace Izen. Although Minns entered appearances in the test case appeal on behalf of the Dixons, DuFresnes, Owenses, and Hongsermeiers, Izen remained counsel of record for the Youngs in that appeal (and counsel of record in the Adair appeal).

On or about April 16, 2001, Izen sent a demand letter to the Defense Fund requesting payment of alleged outstanding fees. In a subsequent lawsuit (filed in the District Court of Harris County, Texas) against the Defense Fund, members of its steering committee, and its business manager, Izen alleged that as of

April 16, 2001, he was owed $44,884.70 "for legal work for the evidentiary hearing and for preparation of the appeal."[7]

Around December 2001, when the Defense Fund was no longer paying Izen's fees, he began entering into individual engagement contracts with various nontest case petitioners. Pursuant to those contracts, Izen undertook to "take all the necessary legal actions and file the necessary papers for intervention of all non-test case Petitioners in the appeal" as well as "take all necessary actions on appeal to obtain a reversal of" the decisions entered in the test cases. Although the contracts recite Izen's billing rate as $300 per hour, they limit the client's obligation to 24 monthly payments of $200 (or, in one case, $100). The contracts also provide that "Attorney's previous bill which the Steering Committee refused to pay and his bill for work on the appeal since April, 2001 shall be paid by payments under this Agreement unless paid from another source."

Also in December 2001, the steering committee of the Defense Fund replaced Minns with Porter & Hedges, L.L.P. (Porter & Hedges). Although Porter & Hedges attorneys Henry Binder and John A. Irvine entered appearances in the test case appeal on behalf of the Dixons, DuFresnes, and Owenses, Minns remained

---

[7] By the time the case went to trial, the business manager, Geoffrey Sjostrom, was the only remaining defendant. After a jury verdict in favor of the defendant, the court entered a take nothing judgment. That judgment is currently on appeal to the Fourteenth Court of Appeals in Texas.

counsel of record for the Hongsermeiers. Thus, three sets of counsel pursued the test case appeal: Izen on behalf of the Youngs, Minns on behalf of the Hongsermeiers, and Porter & Hedges on behalf of the Dixons, DuFresnes, and Owenses (hereafter, the PH appellants).

On July 26, 2002, after the test case appellants' opening briefs, respondent's answering brief, and the test case appellants' reply briefs had all been filed, Jones filed a motion for leave to intervene in the test case appeal on behalf of one of the four Jones petitioners (the Cerasolis). The Court of Appeals denied the Cerasolis' motion by order dated September 6, 2002.

On January 17, 2003, the Court of Appeals reversed and remanded the test cases, holding that the misconduct of the Government attorneys in the trial of the test cases was a fraud on the court, for which no showing of prejudice is required. See Dixon v. Commissioner, 316 F.3d 1041 (9th Cir. 2003) (Dixon V). As for the remedy, the Court of Appeals decreed that respondent be sanctioned by entry of judgment in favor of the test case petitioners "and all other taxpayers properly before this Court on terms equivalent to those provided in the settlement agreement with Thompson and the IRS." Id. at 1047. The Court of Appeals

also remanded the various nontest cases to the Tax Court for further proceedings consistent with Dixon V.[8]

Shortly after issuance of Dixon V, the PH appellants and the Hongsermeiers filed separate requests with the Court of Appeals for attorney's fees incurred on appeal. See 9th Cir. R. 39-1.6. The PH appellants' fee request related solely to services performed by Porter & Hedges, and the Hongsermeiers' fee request related solely to services performed by Minns or under his direction. As filed, both of those requests (hereafter, the Binder/Minns fee requests) relied exclusively on section 7430.

Rather than filing their own fee request with the Court of Appeals, the Youngs, through Izen, filed an objection to the Binder/Minns fee requests. The primary thrust of the objection was that the PH appellants and the Hongsermeiers had not paid or incurred the amounts requested:

> In actuality, Mr. Binder's motion fails to reveal the true clients in interest who have paid him fees to represent their interests on appeal. These "real clients in interest" are the same clients represented by Joe Alfred Izen, Jr. in the appeal styled <u>Barbara L. Adair, Et Al, v. Commissioner</u>, No. 01-70155, which is a "related case" under this Court's Local Rules. * * * Although those real clients in interest paid Mr. Minns and Mr. Binder for representation on appeal, (either involuntarily or voluntarily) neither Mr. Minns nor Mr.

---

[8] In response to inquiries by the Dixon V panel at oral argument, Minns, acting pro bono, filed and pursued complaints against McWade and Sims before their respective State bars and the IRS Office of Professional Responsibility that resulted in their suspensions from practice. See <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-90 (Dixon VI), at Findings of Fact Part IV.E.

Binder ever substituted in on this appeal [No. 01-70155] as their attorney of record. * * *

On the same day, Izen filed a motion in the Adair appeal (docket No. 01-70155) to transfer consideration of appellate attorney's fees to the Tax Court. See 9th Cir. R. 39-1.8. Jones made no filing on behalf of any of the Jones petitioners under either Ninth Circuit rule 39-1.6 or 39-1.8.

The Court of Appeals granted Izen's motion to transfer under Ninth Circuit rule 39-1.8 on May 8, 2003. On May 28, 2003, the Court of Appeals remanded the Binder/Minns fee requests to the Tax Court "for a determination of entitlement and, if warranted, amount."

On May 19, 2005, more than 2 years after the Court of Appeals had granted his motion to transfer under Ninth Circuit rule 39-1.8 in the Adair appeal, Izen filed in this Court, on behalf of the Youngs, a motion for appellate attorney's fees and expenses under section 6673 (the Izen fee request). On July 15, 2005, Jones filed a similar motion in this Court on behalf of the Jones petitioners (the Jones fee request).[9]

In a September 8, 2005 order pertaining to both the Izen fee request and the Jones fee request, which we incorporate by

---

[9] To update the story regarding Sticht's appellate fees, see Dixon v. Commissioner, T.C. Memo. 2006-97 n.12., the Court has been given to understand that Sticht and respondent are close to completion of a comprehensive stipulation and submission regarding the fee claims of participating nontest case petitioners represented by Sticht.

reference and reproduce as the appendix, we concluded that "the reasoning of Cooter & Gell v. Hartmarx Corp., [496 U.S. 384 (1990),] precludes us from awarding appellate fees and expenses under section 6673." We resolved instead to "treat the present movants as having revived their section 7430 claims" (i.e., those raised in the wake of Dixon III and rejected by the Court in Dixon IV on "prevailing party" grounds).[10] With a nod to the Youngs' previous objection to the Binder/Minns fee requests, we ordered the submission of net worth affidavits for all real parties in interest with respect to the Izen fee request and the Jones fee request. See Rule 231(b)(4); see also infra Part I.A. Specifically, we requested the affidavits of "those individuals who have made payments of the requested appellate fees and expenses to Mr. Izen--directly or through contributions to the Atlas Legal Defense Fund--or Mr. Jones or are otherwise liable for any portion of the requested appellate fees and expenses".[11]

On May 10, 2006, we issued our opinion in Dixon v. Commissioner, T.C. Memo. 2006-97 (Dixon VII), awarding, under section 7430, $248,049.27 in respect of the PH appellants' fee request and $158,562.50 in respect of the Hongsermeiers' fee

---

[10] Consistent with that approach, on Nov. 2, 2005, we ordered that all future filings pertaining to the Izen fee request be filed on behalf of the Adairs as well as the Youngs.

[11] We had issued a similar order pertaining to the Binder/Minns fee requests on Sept. 1, 2005. See Dixon v. Commissioner, T.C. Memo. 2006-97 App. A.

request.[12]  In separate orders pertaining to the Izen fee request
(May 10, 2006) and the Jones fee request (June 14, 2006), we
afforded all parties herein an opportunity to rebut any of the
conclusions reached in Dixon VII that are relevant to these fee
requests.

The Izen petitioners request attorney's fees of $375,195.99
and other expenses of $39,805.19, for a total of $415,001.18.
The Jones petitioners request attorney's fees of $125,351.80[13]
and other expenses of $7,784.70, for a total of $133,136.50.

### Discussion

I.  Introduction

A.  Overview of Section 7430

Section 7430 provides that, subject to certain conditions, a
taxpayer who prevails against the Government in any Federal tax
proceeding (administrative or judicial) may recover reasonable
costs, including attorney's fees, paid or incurred in connection
with such proceeding if the Government's position in the

---

[12] As for Dixon VI, see Dixon v. Commissioner, T.C. Memo.
2006-90 (responding to the primary mandate of the Court of
Appeals in Dixon V).  A motion for reconsideration is pending.

[13] That figure actually includes paralegal fees as well as
attorney's fees.  Although sec. 7430 does not specifically
provide for recovery of paralegal fees, this Court has routinely
awarded them, and we have no reason to believe that the Court of
Appeals for the Ninth Circuit would take a different approach.
See Dixon v. Commissioner, T.C. Memo. 2006-97 n.14.  Although
paralegal fees do not fit neatly within the category of either
"attorney's fees" or "expenses", we follow the Jones petitioners'
lead in grouping them with attorney's fees.

proceeding was not substantially justified.  Sec. 7430(a), (c)(1)(B)(iii), (c)(4)(A) and (B); see also <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-97 n.28.  In its report accompanying the bill in which section 7430 originated, the House Committee on Ways and Means contemplated that such fee awards "will enable individual taxpayers to vindicate their rights regardless of their economic circumstances."  H. Rept. 97-404, at 11 (1981).

A taxpayer seeking litigation costs under section 7430 must have exhausted all available administrative remedies prior to litigation and, if an individual, must not have had a net worth in excess of \$2 million as of the filing date of the suit.[14]  Sec. 7430(b)(1), (c)(4)(A)(ii); see 28 U.S.C. sec. 2412(d)(2)(B)(i) (1988) (individual net worth limitation contained in the Equal Access to Justice Act (EAJA) and incorporated by reference in sec. 7430(c)(4)(A)(ii)).  Reasonable attorney's fees may not exceed the rate of \$125 per hour (as adjusted for inflation) unless "a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax

--------

[14] We have applied the net worth requirement as of June 10, 1992 (the date on which the attorney misconduct phase of this litigation effectively commenced).  See app. note 14 and accompanying text.

expertise, justifies a higher rate." Sec. 7430(c)(1)(B)(iii).[15] In addition, a court may not award fees with respect to any portion of the proceedings unreasonably protracted by the taxpayer. Sec. 7430(b)(3).

Respondent publishes the inflation-adjusted rate cap on an annual basis. The hourly rate cap for fees incurred in 2000 and 2001 (the earliest years for which petitioners claim fees) is $140. Rev. Proc. 99-42, sec. 3.26, 1999-2 C.B. 568, 572; Rev. Proc. 2001-13, sec. 3.26, 2001-1 C.B. 337, 341. The hourly rate cap for fees incurred in 2002 through 2005 is $150. Rev. Proc. 2001-59, sec. 3.28, 2001-2 C.B. 623, 628; Rev. Proc. 2002-70, sec. 3.32, 2002-2 C.B. 845, 850; Rev. Proc. 2003-85, sec. 3.33, 2003-2 C.B. 1184, 1190; Rev. Proc. 2004-71, sec. 3.35, 2004-2 C.B. 970, 976. The hourly rate cap for fees incurred in 2006 is $160. Rev. Proc. 2005-70, sec. 3.36, 2005-47 I.R.B. 979, 985.

B.    Amplification of September 8, 2005 Order

Before turning to our analysis under section 7430, we briefly revisit our September 8, 2005 order (app.) in the light of our recent Dixon VII opinion.

---

[15] The latter two examples of special factors were added by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3101(a)(2), (g), 112 Stat. 727, 729, effective for costs incurred after Jan. 18, 1999. All of the costs sought by petitioners were incurred after Jan. 18, 1999.

### 1.   Inapplicability of Section 6673

In our September 8 order, we indicated that we would evaluate petitioners' fee requests under section 7430 rather than the proffered ground of section 6673.  We premised that decision on the distinction the Supreme Court has drawn between (1) "fee-shifting" provisions (such as section 7430) that embody a substantive policy (e.g., encouraging private parties to enforce their rights by allowing them to recover their attorney's fees if successful) and (2) what may be termed "fee sanction" rules (such as section 6673), the applicability of which "depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation."  Chambers v. NASCO, Inc., 501 U.S. 32, 53 (1991); see also Bus. Guides, Inc. v. Chromatic Commcns. Enters., Inc., 498 U.S. 533, 553 (1991); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 409 (1990).  We noted that, whereas a fee award under a fee-shifting provision generally encompasses all aspects of the litigation, see Commissioner, INS v. Jean, 496 U.S. 154, 161-162 (1990), fees awarded as a sanction are properly limited to those directly caused by the sanctionable conduct, see Cooter & Gell v. Hartmarx Corp., supra at 406-407. In Dixon VII, we discussed the practical consequences of that distinction in the context of this fee litigation:[16]

---

[16] The PH appellants had filed a motion in this Court in November 2005 requesting appellate fees under sec. 6673, "to
(continued...)

Under section 6673(a)(2), we are authorized to sanction respondent for the attorney misconduct that marred the test case trial by charging him the full amount of petitioners' attorney's fees relating to the Tax Court proceedings necessitated by that misconduct, subject only to the requirement that such amounts have been reasonably incurred.  Because that misconduct did not extend to the appellate proceedings, petitioners are relegated to the applicable fee-shifting provision-- section 7430, with its hourly rate cap and eligibility requirements--with regard to their appellate fee requests.  [Dixon v. Commissioner, T.C. Memo. 2006-97 at Part I.C.; citation and fn. refs. omitted.]

Those observations apply equally here.

### 2.    Real Parties in Interest

We also indicated in our September 8 order that we would look to the real parties in interest with respect to petitioners' fee requests in applying the net worth requirement of section 7430(c)(4)(A)(ii).  We first adopted that approach in an order pertaining to the Binder/Minns fee requests that we had issued 1 week earlier.  See supra note 11 and accompanying text.  In Dixon VII, we amplified our thinking in that regard:

The case for looking beyond the named parties is particularly compelling in these proceedings, where similarly situated taxpayers not only shared the costs of the litigation but also "had rights at stake in the case on the merits".  Sisk, * * * ["The Essentials of the Equal Access to Justice Act:  Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One)," 55 La. L. Rev. 217 (1994)] at 346 (arguing that one can be a real party in interest with respect

_____

[16](...continued)
ensure that their requests for fees on appeal before this Court are procedurally postured with the Youngs' Motion".  We summarily denied the PH appellants' motion "For the reasons discussed in our Order dated September 8, 2005".

to an EAJA fee request--and thereby potentially entitled to recover the requested fees--only by virtue of one's status as a real party in interest in the underlying litigation on the merits; i.e., that financial responsibility for the claimed legal fees does not confer real party in interest status).

We now hold that the real parties in interest in this litigation include not only the test case petitioners and participating nontest case petitioners, but also all other remaining nontest case petitioners. * * * [Dixon v. Commissioner, T.C. Memo. 2006-97 at Part II.B.2.; fn. refs. omitted.]

We apply that reasoning to petitioners' fee requests as well.

II.  Entitlement to Relief Under Section 7430

A.  Jones Fee Request--Jurisdictional Issue

1.  Respondent's Position

Respondent maintains that this Court lacks jurisdiction to act on the Jones fee request.  In his response to that request, respondent states:

Mr. Jones never filed with the Ninth Circuit any application or motion pertaining to an award of appellate attorney's fees.  Unlike the situation with Messrs. Binder, Minns and Izen, there is no order from the Ninth Circuit conferring jurisdiction on this court to determine the appropriate amount of Mr. Jones' appellate attorney's fees.  [Fn. ref. omitted.]

Respondent then notes that, under Ninth Circuit rule 39-1.6:

"The period for Mr. Jones to request appellate attorney's fees in connection with his interlocutory appeal has long since expired."

2.  Analysis

a.  September 8, 2005 Order

As indicated above, in our September 8, 2005 order, see appendix, we resolved to "treat * * * [petitioners] as having revived their section 7430 claims" that we had rejected in Dixon IV.  We did so "In light of the test case petitioners' subsequent appellate victory, and in order to give effect to Jean's mandate to '[treat] a case as an inclusive whole' in applying fee-shifting statutes".[17]  That approach presupposes, in derogation of respondent's jurisdictional argument, that a request for appellate fees under a fee-shifting statute (as opposed to a "fee sanction" rule, see supra Part I.B.1.) need not originate in the Court of Appeals.  We continue to adhere to that view.  See Little Rock Sch. Dist. v. State of Ark., 127 F.3d 693, 696-697 (8th Cir. 1997) (claimant's failure to move for appellate fees under 8th Cir. R. 47C--the analog of Ninth Circuit rule 39-1.6 and 39-1.8--did not preclude District Court from including appellate fees in its fee award under civil rights fee-shifting statute; although filing in the Court of Appeals is the preferred

---

[17] See Commissioner, INS v. Jean, 496 U.S. 154, 161-162 (1990), in which the Supreme Court held that the recipient of a fee award under the Equal Access to Justice Act (EAJA), the fee-shifting statute from which sec. 7430 derives, may recover fees incurred litigating the fee award without a separate showing that the Government's opposition to the fee award was not substantially justified.

procedure for requesting appellate fees, "Rule 47C cannot and does not affect the jurisdiction of the district courts").

   b. <u>Recent Ninth Circuit Cases</u>

Two recent opinions of the Court of Appeals for the Ninth Circuit reveal that the law of the circuit on this point is unsettled.  In <u>Cummings v. Connell</u>, 402 F.3d 936, 940, 947-948 (9th Cir. 2005), a case involving the general civil rights fee-shifting statute, the Court of Appeals held that a District Court is authorized to award appellate fees only if, in response to the requesting party's timely filing under Ninth Circuit rule 39-1.6 or 39-1.8, the Court of Appeals remands the request or transfers the issue to the District Court.  However, the Court of Appeals appears to have retreated from that jurisdictional reading of its rules in <u>Twentieth Century Fox Film Corp. v. Entmt. Distrib.</u>, 429 F.3d 869 (9th Cir. 2005), involving the fee-shifting provision of the 1976 Copyright Act, 17 U.S.C. sec. 505 (2000).  The court described the appellant's argument in that case as follows:

> Finally, * * * [appellant] argues that the district court improperly awarded fees generated by * * * [appellees] in defending against * * * [appellant's] prior appeal of the district court's summary judgment award.  Relying heavily on Circuit Rules 39-1.6 and 39-1.8, * * * [appellant] contends that the district court was without jurisdiction to award * * * [appellees'] appeal fees, primarily because * * * [appellees] did not first file an application with us to recover fees and expenses.  [<u>Twentieth Century Fox Film Corp. v. Entmt. Distrib.</u>, <u>supra</u> at 884.]

Having spelled out the argument, the Court of Appeals did not address it.  The Court of Appeals instead framed the issue in terms of whether a prevailing party is entitled to "fees for an intermediate appellate stage of its litigation where it was unsuccessful".  Id.  The Court of Appeals upheld the District Court's award of appellate fees, id., something it could not have done had it believed that the District Court lacked jurisdiction to award those fees.

   c.   Conclusion

We continue to subscribe to the view that this Court has the authority to consider (and award) both trial fees and appellate fees under section 7430 without the necessity of a separate filing in the Court of Appeals.  Although we are mindful of Cummings v. Connell, supra, the forbearance of the Court of Appeals in Twentieth Century Fox Film Corp. v. Entmt. Distrib., supra, leads us to believe we are not faced with a situation where we "would surely be reversed" on this issue on appeal.  See Lardas v. Commissioner, 99 T.C. 490, 495 (1992).  Accordingly, we hold that we have jurisdiction to consider the Jones fee request.

   B.   Paid or Incurred Requirement

Unlike certain other fee-shifting statutes, section 7430 generally allows the recovery of attorney's fees only to the extent such amounts have been paid or incurred.[18]  Sec.

---

[18] But see sec. 7430(c)(3)(B), providing an exception for
                                                  (continued...)

7430(a)(2), (c)(1)(B)(iii); see <u>Frisch v. Commissioner</u>, 87 T.C. 838, 844 (1986) (distinguishing the Civil Rights Attorney's Fees Awards Act of 1976 (CRAFAA), 42 U.S.C. sec. 1988 (2000), under which a court "may allow the prevailing party * * * a reasonable attorney's fee"); cf. <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 96 (1989) (fee award under CRAFAA is not limited to the amount the prevailing party owes his attorney pursuant to contingent fee agreement). For purposes of section 7430, fees are "incurred" when there is a legal obligation to pay them. E.g., <u>Grigoraci v. Commissioner</u>, 122 T.C. 272, 277-278 (2004).

In his opposition to the Izen fee request, respondent, referring to the $373,400.71 of fees and other expenses initially requested, asserts that "there is no showing that the Youngs have paid (or were obligated to pay) this or any other amount." Respondent raised a similar argument with regard to the Binder/Minns fee requests. As we stated in Dixon VII: "Under the 'real party in interest' approach * * *, the fact that petitioners have not, by and large, paid or incurred the claimed fees and expenses does not render those amounts unrecoverable under section 7430." <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-97 at Part II.B.2. Rather, "the relevant inquiry is * * * whether the real parties in interest who did pay or incur those amounts satisfy the net worth requirement imposed by section

---

[18](...continued)
pro bono services.

7430(c)(4)(A)(ii)."  Id.; see also id. n.27.  As respondent has forgone the opportunity provided in our May 10 and June 14, 2006 orders to challenge that (or any other) aspect of Dixon VII, we shall again look to the real parties in interest to determine the extent to which the requested amounts were paid or incurred.  See infra Part III.H.

C.    Substantial Justification Defense

Under section 7430(c)(4)(B)(i), it is "the position of the United States in the proceeding" that is evaluated under the substantial justification standard.  In Dixon VII, we identified that position as "respondent's litigating position regarding the legal effect of the attorney misconduct (i.e., that such misconduct amounted to harmless error and therefore did not invalidate the decisions entered against the test case petitioners following the issuance of Dixon II)."  Dixon v. Commissioner, T.C. Memo. 2006-97 at Part II.C.1.  We then concluded, although we had adopted that very position in Dixon III, that the finding of the Court of Appeals in Dixon V that we had committed clear error in that regard compelled the conclusion that respondent's position was not substantially justified.  As respondent has declined our invitation to challenge that aspect of Dixon VII, we similarly conclude here that the position of the United States, as so identified, was not substantially justified.

D.    Other Threshold Requirements

Respondent does not allege that petitioners failed to exhaust their administrative remedies and does not dispute that petitioners prevailed in the proceedings at issue.

E.    Conclusion

Petitioners are entitled to relief under section 7430.

III. Amounts of Awards

A.    Overview

Our determination of the amounts of petitioners' awards under section 7430 turns on three inquiries with respect to each fee request:  First, what is a reasonable attorney's fee (within the confines of section 7430) for the representation covered by the fee request?  Second, what are the reasonable expenses associated with that representation?  Third, to what extent have real parties in interest who satisfy section 7430's net worth requirement (hereafter, eligible persons) paid or incurred those amounts?[19]

B.    Reasonable Attorney's Fee:  The Lodestar

1.    In General

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley

---

[19] Respondent does not allege that petitioners unreasonably protracted any portion of the proceedings at issue.  See sec. 7430(b)(3).

v. Eckerhart, 461 U.S. 424, 433 (1983).  The resulting figure, commonly referred to as the lodestar, "'has, as its name suggests, become the guiding light of * * * [the Supreme Court's] fee-shifting jurisprudence.'"  Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002) (quoting Burlington v. Dague, 505 U.S. 557, 562 (1992)); see also Hensley v. Eckerhart, supra at 433 n.7 ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

>2.   Hours Reasonably Expended

>a.   The Limited Success Factor

In Hensley, the Supreme Court recognized that the determination of hours reasonably expended extends beyond considerations of efficiency and documentation.  As the Court stated:

>If * * * a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. * * *

>* * * That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. * * *

Hensley v. Eckerhart, supra at 436.  Professor Sisk sometimes refers to this aspect of reasonableness as the limited success factor.  Sisk, "The Essentials of the Equal Access to Justice Act:  Court Awards of Attorney's Fees for Unreasonable Government

Conduct (Part Two)", 56 La. L. Rev. 1, 119 (1995).  While it is often difficult to allocate attorney time between successful and unsuccessful issues and claims, "denial of a particular form or aspect of relief occasionally may be attributable to a discrete motion or proceeding, thus allowing the limited success factor to be measured by hours devoted to that effort."  Id.; see also Hensley v. Eckerhart, supra at 436 (a court applying these principles "may attempt to identify specific hours that should be eliminated").

> b.    Hours Relating to the Issue of Attorney's Fees

Respondent does not dispute that hours devoted to the recovery of attorney's fees (sometimes referred to herein as "fee request" hours) are potentially compensable under section 7430. See, e.g., Huffman v. Commissioner, 978 F.2d 1139, 1149 (9th Cir. 1992), affg. in part and revg. in part on other grounds T.C. Memo. 1991-144.  The fees generated by fee request hours are commonly referred to as "fees-on-fees" or "fees-for-fees" (as opposed to "merits" fees, which are attributable to "merits" hours).  Because we apply a separate percentage reduction to the portion of Izen's lodestar attributable to fee request hours (the fees-on-fees lodestar) based on the ratio of merits hours allowed to merits hours claimed, see infra Part III.F., we separately identify his merits hours and fee request hours.[20]

---

[20] The Jones fee request (as supplemented) does not include
(continued...)

### 3.   Reasonable Hourly Rate Under Section 7430

As discussed supra in Part I.A., the determination of a reasonable hourly rate under section 7430 is subject to an inflation-adjusted cap "unless the court determines that * * * a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate."  Sec. 7430(c)(1)(B)(iii). In Dixon VII, after a thorough analysis of the relevant caselaw, we concluded that we were constrained to apply the statutory rate cap.  As petitioners have not proffered any additional arguments in that regard, we stand by our analysis and conclusion in Dixon VII and shall apply the rate cap to petitioners' fee requests.

### C.   Hours Reasonably Expended--Izen Fee Request

#### 1.   Preliminary Issues

Before we set forth our analysis of, and adjustments to, Izen's specific time entries, we address two overarching issues raised by respondent.

##### a.   Scope of Representation We May Consider

Respondent maintains, in his opposition to the Izen fee request, that "Only the time spent on the 'Adair appeal' [approximately 145 hours] is subject to the court's evaluation for a determination of an appropriate award of attorney's fees on

---

[20](...continued)
any time entries relating to work on the fee request.

appeal." Respondent reasons that Izen filed his Ninth Circuit rule 39-1.8 motion (requesting that the Court of Appeals transfer consideration of attorney's fees to the Tax Court) in case No. 01-70155--the Adair appeal--and that "[t]he period for Mr. Izen to request appellate attorney's fees in connection with the appeal in Case No. 00-70858 [the test case appeal] has long since expired." See 9th Cir. R. 39-1.6.

We begin by observing that we have already held we have jurisdiction to consider the Jones fee request even though Jones made no filing under either Ninth Circuit rule 39-1.6 or 39-1.8. See supra Part II.A. It follows that we may consider the Izen fee request in its entirety, despite the fact that Izen made no filing in the test case appeal under either Ninth Circuit rule 39-1.6 or 39-1.8. Moreover, we would reach the same conclusion even if an appellate filing were a prerequisite to our consideration of appellate fees under section 7430. That is, we conclude in the alternative that Izen's timely motion under Ninth Circuit rule 39-1.8 in the Adair appeal was sufficient to transfer the issue of Izen's fees in the test case appeal as well.

Although we have been unable to find a case directly on point, we believe Native Vill. of Quinhagak v. United States, 307 F.3d 1075 (9th Cir. 2002), is sufficiently analogous to support our alternative ground for considering the Izen fee request in its entirety. Quinhagak was one of several lawsuits filed in the

U.S. District Court for the District of Alaska challenging the Federal Government's implementation of the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. secs. 3101-3233 (2000). As the Court of Appeals explained, the District Court had consolidated two such cases, known as Katie John and Babbitt, to serve as the lead cases:

> Although several other cases were filed that turned on the resolution of the * * * issues in Katie John/Babbitt, the district court declined to consolidate these additional dependent cases and chose, instead, to manage them together and stayed proceedings pending resolution of the core Katie John/Babbitt issues.
>
> *     *     *     *     *     *     *
>
> The district court added the instant case to the list of cases to be managed jointly in connection with Katie John/Babbitt and, as part of an order explaining how the joint management would proceed, the district court invited the plaintiffs in the jointly managed cases, including the case at hand, to submit amicus briefing on the * * * issues in the consolidated cases.

Native Vill. of Quinhagak v. United States, supra at 1077-1078. The various plaintiffs ultimately prevailed, and the Quinhagak plaintiffs moved for attorney's fees under ANILCA's fee-shifting provision. See 16 U.S.C. sec. 3117(a) (2000).

The District Court granted the Quinhagak plaintiffs' fee request in large part, rejecting the argument that they were not entitled to fees for work relating to the Katie John/Babbitt cases. In holding that the District Court did not abuse its discretion in that regard, the Court of Appeals quoted at length from the District Court's order:

> the <u>Katie John</u> case was the vehicle which the court chose to resolve the * * * issues for all of the jointly managed cases. * * *
>
> "For defendants to suggest, as they do, that plaintiffs' work was for different parties in a different case misconstrues and misrepresents the reality of what was going on in these jointly managed cases.  For all practical purposes, there was but one case in which the * * * issues were going to be decided, and that decision was going to be binding in all of the cases.  The actual briefs may have been filed (were filed) in the <u>Katie John</u> case, but they bore directly upon issues raised by the plaintiffs in this case. * * * "

<u>Native Vill. of Quinhagak v. United States</u>, <u>supra</u> at 1079.  Thus, even though their brief in the <u>Katie John</u>/<u>Babbitt</u> cases had been "'proffered by a technical non-party'", <u>id.</u> (again quoting the District Court), the <u>Quinhagak</u> plaintiffs were entitled to recover the corresponding attorney's fees.  Inasmuch as the test case appeal and the Adair appeal share the same real parties in interest and substantive issues, we similarly conclude that Izen's timely motion under Ninth Circuit rule 39-1.8, although technically filed in the Adair appeal, effectively transferred the issue of Izen's fees in the test case appeal as well.

      b.   <u>Discrepancies Between Fee Request and Alleged Invoice</u>

On April 13, 2006, respondent submitted to the Court certain documents he had recently received from Geoffrey Sjostrom, the business manager of the Defense Fund.  See <u>supra</u> note 7 and accompanying text.  The documents include several pages of a facsimile transmission that, based on the identifying information

printed thereon, appear to have originated from Izen's telecopier on the evening of April 3, 2001.  Sjostrom alleges that the pages, which contain time entries substantially similar (in content and format) to those included in the Izen fee request, are part of a contemporaneous invoice submitted by Izen to the Defense Fund.  As Sjostrom points out, for the period July 20, 2000 through March 20, 2001, the time entries in the alleged invoice amount to 56.25 hours, while those included in the Izen fee request for the same period amount to 130.93 hours.[21]  The 74.68-hour discrepancy is attributable to new entries as well as additional time claimed for existing entries.  In the supplemental filing by which he submitted those documents to the Court, respondent states:

> Although respondent did not previously question the veracity of the billing records, respondent requests that, in light of this new information, the court review all of Mr. Izen's billing records and reduce the fee award.

In his response to respondent's supplemental filing, Izen neither questions the authenticity of the April 2001 document nor alleges that the discrepancies are attributable to some kind of billing error.  Rather, Izen attempts to downplay the significance of the document, describing it as an "informational

---

[21] Sjostrom also observes that the billing rate in the alleged invoice is much lower than the rate claimed in the Izen fee request.  We are not troubled by that discrepancy; Izen clearly based his request for the higher rate on his notion of the market value of his services.  See infra Part III.H.1.e.

bill". He then separately addresses 17 of the discrepancies, vouching for the necessity of the services and reasonableness of the time not included in the bill (hereafter, the Sjostrom bill).

Although Izen has not, in our view, adequately explained why the Sjostrom bill does not include certain charges claimed in the Izen fee request, we are not inclined to pass judgment on his veracity in that regard without further investigation, which we are loath to undertake at this late date.[22] Accordingly, we shall assume that the time entries in the Izen fee request accurately depict the services performed by Izen and the number of hours devoted thereto. As discussed below, however, that does not mean that the Sjostrom bill is irrelevant to our determination of hours reasonably expended.

### 2. Adjustments to Hours Claimed

The Izen petitioners base their fee request on 1,072.03 hours of attorney time, including 223.23 hours we have identified as fee request hours (leaving 848.8 merits hours). Our adjustments to the hours claimed fall into eight major categories. Of course, where adjustments are described in more than one category, we take them into account only once.

---

[22]Respondent, after receiving the Sjostrom bill from Sjostrom and bringing it to the Court's attention by means of a supplement to respondent's opposition to Izen's appellate fee request, did not request an evidentiary hearing on this point.

a.  Hours Relating to "Intervention"

Izen allocates 147.51 hours of his time to "intervention", which we take to include not only his efforts to include in the Adair appeal hundreds of nontest cases that had never been consolidated with the test cases,[23] but also time relating to Jones's belated attempt to intervene in the test case appeal on behalf of the Cerasolis.  We have previously described Izen's own intervention efforts as "unsuccessful and unnecessary".  Dixon v. Commissioner, T.C. Memo. 2006-97 n.42.  In response to that characterization, the Izen petitioners assert in their latest filing that

> Izen was successful in at least establishing before the Ninth Circuit that the prospective Intervenors which were denied intervention status before this Court[24] had an interest in this case which entitled them to appeal. Further, it was never clear in this proceeding that the test cases were, at all times, adequate representatives of the prospective intervenors or the * * * [participating nontest case petitioners]. * * *

The assertion that Izen "[established] before the Ninth Circuit that the prospective Intervenors * * * [were] entitled

---

[23] We distinguish those efforts from actions necessary to preserve the participation rights of the Adairs, whose case was included in our certification order.  See infra note 36.

[24] In September and October 1992, after this Court had entered decisions in the Thompson and Cravens cases, Izen and Sticht filed motions for leave to intervene in those cases on behalf of numerous nontest case petitioners, which we denied. See Adair v. Commissioner, 26 F.3d 129 (9th Cir. 1994) (dismissing appeal of that denial).  Respondent notes that Izen's lists of "prospective intervenors" in the Thompson/Cravens cases and the test case appeal, respectively, are photocopies of the same document.

* * * to appeal" does not square with the language of that court's November 20, 2001 order holding the Adair appeal in abeyance pending the resolution of the test case appeal.  In that order, the Court of Appeals stated that, because the Tax Court had consolidated the Adairs' case with the test cases for purposes of the evidentiary hearing, "It * * * appears at least arguable that * * * [the Adairs] could appeal as intervenors from a final decision in the test cases."[25]  The court added, however, that

> if petitioners' counsel, Joe Alfred Izen, Jr., Esq., asserts that this court has jurisdiction in this case over any non-test Tax Court case other than No. 35608-86 [i.e., the Adairs' case], he shall submit to the court evidence of the following: (1) that the additional non-test case or cases were at one time consolidated with the test cases; * * *.

Because none of Izen's other "prospective intervenors" had ever had any of their cases consolidated with the test cases, Izen would not have been able to establish jurisdiction of the Court of Appeals over their cases.

Given the unsuccessful nature of Izen's intervention efforts, we believe a complete disallowance of the corresponding hours would be well within our discretion.  See Hensley v. Eckerhart, 461 U.S. at 436-437 (discussed supra Part

---

[25] As discussed above, the Court of Appeals apparently construed Izen's "Notice of Appeal of Certain Intervenors" as an attempt to appeal the decisions entered in the test cases rather than a petition for permission to appeal the orders this Court had certified for interlocutory appeal.

III.B.2.a.).[26]  We hesitate, however, to disregard completely Izen's concern that the test cases were insufficiently representative.  Accordingly, we shall defer to Izen's professional judgment in that regard--up to a point.  When the Court of Appeals stayed the proceedings in the interlocutory appeals of the other participating nontest case petitioners on May 10, 2001, pending resolution of the test case appeal, it effectively determined that the interests of those nontest case petitioners were adequately represented in the test case appeal. That determination belies any continued justification for Izen's efforts that could counteract Hensley's limited success factor. We therefore disallow 75.84 hours Izen incurred after May 10, 2001, that relate to "intervention", including 10.92 hours relating to Jones's July 2002 motion to intervene.[27]  See infra Part III.D.2.c.

---

[26] We do not mean to suggest that Hensley requires courts to "scalpel out attorney's fees for every setback" suffered by a prevailing party.  Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991).  However, we fail to see how Izen's intervention efforts "[contributed] to the ultimate victory in the lawsuit."  Id. at 1052.

[27] Izen's first time entry after May 10, 2001, relating to intervention is dated June 2, 2001.  Given the extent of communications between Izen, Jones, and Sticht, we presume that Izen was aware of the Court of Appeals' May 10, 2001 order by that time.

b.    Hours Subject to "Billing Judgment" Inference

Although we accept Izen's contention that the time charges he excluded from the Sjostrom bill are bona fide, see supra Part III.C.1.b., his exclusion of those charges undermines his claim that the additional hours are properly chargeable to the Government.  Just as a recent arm's-length sale of property is a reliable indicator of that property's fair market value, see, e.g., Huber v. Commissioner, T.C. Memo. 2006-96, a contemporaneous invoice is a reliable indicator of the "hours reasonably expended" aspect of the lodestar calculation.  As the Supreme Court recognized in Hensley v. Eckerhart, supra at 434:

> "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  Copeland v. Marshall, 205 U.S. App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc).

We believe it likely that most of the discrepancies between the Sjostrom bill and the Izen fee request are attributable to Izen's exercise of billing judgment.  Indeed, except as noted in the next paragraph, the new entries in the fee request (and existing entries with time increases) relate to procedural or peripheral matters, administrative tasks, or other expenditures of time that strike us as prime candidates for Izen's "billing judgment" cleaver.[28]  For instance, the fee request, but not the

---

[28] One of the new entries is actually a duplicate entry for

(continued...)

Sjostrom bill, includes a 5.75-hour charge for Izen's "preparation for conference" on top of the next day's 6-hour charge for the meeting itself. The fee request, but not the Sjostrom bill, includes a charge for an additional hour that Izen currently claims he spent "locating the Petition for Writ of Certiorari he filed with the Supreme Court". As any billing attorney can attest, these are the types of attorney time charges that, however necessary the underlying activity, are difficult to justify on a client invoice. Under the corollary espoused by the Supreme Court in Hensley v. Eckerhart, supra, they should not be chargeable to respondent, either.[29]

On the other hand, we have identified five time entries between January 16 and January 29, 2001 that, despite their

---

[28](...continued)
the same date (Aug. 25, 2000--2.5 hours).

[29] Other examples include the following: New entry for 2.25 hours devoted to forwarding this Court's Notice of Filing of Notice of Appeal to the test case petitioners; 2 additional hours for "transcript search" for the Court's comments concerning settlement; additional time claimed for routine filings such as motions for enlargement of time (2.5 hours) and the Ninth Circuit's Civil Appeals Docketing Statement (4.25 hours); additional time for "legal research/check of citations" or "research of authorities cited" relating to other attorneys' procedural filings, including Jones's motion for reconsideration of the Court of Appeals' dismissal of his interlocutory appeal as untimely (4.08 hours), the Government's response thereto (3.5 hours), the ensuing order of the Court of Appeals (5.5 hours), and Sticht's objection to consolidation on appeal (1 hour); new entry for 2.25 hours devoted to "proof of filing Notice of Appeals"; and 2 additional hours for travel time to Minns's office for meeting "re - providing access to Hongsermeier records".

omission from the Sjostrom bill, are not as susceptible to the "billing judgment" inference.  Those entries, none of which is among the 142 time entries to which respondent specifically objected in his initial response, chronicle Izen's earliest substantive efforts with respect to his opening brief in the test case appeal.  Whatever Izen's reasons for not including those entries in the Sjostrom bill,[30] we deem the corresponding 32.5 hours to have been a reasonable expenditure of time on his part.[31] Accordingly, we disallow only 42.18 of the 74.68 hours excluded from the Sjostrom bill (74.68 - 32.5 = 42.18).

c.    Review of Other Parties' Nonsubstantive Filings

Izen's time entries include numerous references to his "review, filing and analysis" of other parties' filings (and corresponding orders) relating to attorney appearances and withdrawals, changes of address, extension requests, and bills of costs.  While these entries (typically claiming .25 hours) do not necessarily stand out when viewed in isolation, we deem their cumulative effect to be unreasonable.  For instance, Izen claims to have spent 6 full hours on August 24, 2000, reviewing, filing,

_____

[30] It is conceivable that Izen feared he would have to share his substantive work product with the Minns faction if he included those time entries in the Sjostrom bill.  For his part, Izen merely asserts that "At this point, neither Sjostrom nor the legal defense fund had any intention of paying Izen for any work he was doing on appeal".

[31] The omission of those hours from the Sjostrom bill does raise the issue of whether the corresponding fees were "paid or incurred".  See infra Part III.H.1.e.

and analyzing 24 Motions for Withdrawal from Joint Representation filed by attorney Declan O'Donnell.  We find that difficult to believe, and even if it were true, it would constitute a grossly inefficient use of attorney time.  We have identified 66 entries of this nature, and we disallow in full the corresponding 16.88 hours (including 2.58 fee request hours).

### d. Representation Issues

In Dixon VII, we resolved not to hold the Government responsible for fees attributable to the legal and proprietary jockeying occasioned by the steering committee's break with Minns.  We take the same approach here with respect to the steering committee's earlier break with Izen.  Thus, for example, we disregard time spent by Izen addressing matters such as "status of Atlas Defense Fund", "continued representation", "payment of outstanding bill", and "demand for accounting for JAI clients".  As was the case in Dixon VII, where time entries from the period of the appeal do not reveal the subject matter of client communications, we assume a 50/50 split between compensable and noncompensable matters.  The foregoing adjustments, involving 31 time entries, result in an additional 15.025-hour reduction.

### e. Matters Relating to Remand Proceedings

We have identified 16 time entries, totaling 12.25 hours, that relate to the post-appellate remand proceedings in this

Court rather than the appeal.  We reduce the claimed hours accordingly.

### f.    Duplicate Entries

We have identified 10 time entries that appear to be duplicative or, in our judgment, are excessive in light of other, similar entries.  Elimination of those 10 entries results in an additional 13.05-hour reduction (including 8 fee request hours).

### g.    Separately Claimed Fee Request Hours

In their latest filing, the Izen petitioners claim an additional 117.4 hours of attorney time relating to work on their fee request.  In an affidavit submitted with that filing, Izen states that he devoted 36 hours to the initial preparation of the fee request, 8.25 hours to the latest filing, and 73.15 hours to a variety of tasks (described and dated in 13 numbered paragraphs) between May 10, 2005 and April 24, 2006.  The problem here is one of overlap.  The initial fee request (apparently mailed on May 12, 2005) includes time entries for May 9-11, 2005, claiming 28.5 hours (10, 12, and 6.5 hours, respectively) for preparation of the fee request.  In his latest affidavit, Izen claims an additional 15.33 hours relating to fee request preparation on May 10 and 12, 2005 (7.33 and 8 hours, respectively).  The new claim of 7.33 hours for May 10 duplicates the earlier May 10 time entry claiming 12 hours.  Adding the additional 8 hours claimed for May 12 to the 28.5 hours previously claimed for May 9-11 produces a total of 36.5 hours

devoted to fee request preparation, which approximates the 36 hours Izen separately claims to have devoted to that task.[32]  We therefore conclude that the 36 hours separately referenced in Izen's latest affidavit are accounted for in the initial fee request (28.5 hours) and his new claim for May 12, 2005 (8.0 hours).  Disallowance of the duplicate claim for 36 hours, as well as the duplicate claim for 7.33 hours on May 10, 2005, results in a downward adjustment of 43.33 hours.

h.    Miscellaneous Additional Adjustments

We have identified an additional 23 time entries (only 3 of which exceed 0.33 hours) that either (1) pertain to matters that are unrelated to, or are only marginally related to, the appellate proceedings or the Izen fee request, or (2) are insufficiently descriptive to establish the required nexus.  The first category includes two entries relating to the Izen/Jones motion for trial fees that we ruled on in Dixon IV and three entries relating to parallel State tax proceedings.  The second category includes unexplained references such as "letter requesting trust documents from Darrell Hatcher" and "handwritten

---

[32] Izen actually claims that the 36 undated hours relate to both preparation of the fee request and "responding to Respondent's objections to the application".  We note that Izen separately claims--and we allow in full--18.16 hours on Dec. 1 and 2, 2005, relating to the Izen petitioners' "Supplemental Response", which responds to respondent's opposition to the fee request.

notation from Alan Jones".  The 23 entries amount to 7.84 hours, which we disallow in full.

### 3. Summary

The foregoing adjustments amount to 226.395 hours, comprising 172.485 merits hours and 53.91 fee request hours. Accordingly, we conclude that Izen reasonably expended 845.635 hours (1,072.03 - 226.395) overall, comprising 676.315 merits hours (848.8 - 172.485) and 169.32 fee request hours (223.23 - 53.91).

### D. Hours Reasonably Expended--Jones Fee Request

### 1. Reliability of Documentation

The Jones fee request initially contained no time entries whatsoever covering the period of the appeal.  Rather, the Jones petitioners based the amount of their fee request ($133,136.50) on the aggregate payments received by Jones from his nontest case petitioner clients from August 16, 1999 through May 27, 2003. After two requests for additional documentation, the Jones petitioners finally submitted "reconstructed worksheets of time" for Jones and two unidentified paralegals.[33]  The time entries included in Jones's worksheet amount to 143.87 hours, while those

---

[33] The Jones petitioners explain:  "The computer system in [Jones's] office was completely overhauled and reformatted in January of 2003, so much of the previously stored information was not accessible for the purposes required herein and worksheets had to be manually reconstructed."

included in the paralegals' worksheets amount to 210.5 hours
(106.25 hours and 104.25 hours, respectively).

Respondent points out that, with the exception of four time
entries (totaling 2 hours) that appear in one of the paralegal
worksheets but not the other, the paralegals' worksheets are in
all respects identical.  Furthermore, the 64 identical time
entries contained in the paralegals' worksheets also appear in
Jones's worksheet, with the only difference being the amount of
time claimed for each entry (the dates and descriptions are
identical).[34]  Respondent understandably questions the reliability
of these worksheets.

While we are willing to accept the "reconstruction" of
paralegal time based on Jones's worksheet, we question the total
number of paralegal hours so reconstructed.  In a declaration
submitted with the initial fee request, Jones's office manager-
controller posits an attorney/paralegal hours ratio for the
period August 16, 1999 through May 27, 2003, of almost 8 to 3.
Materials submitted by the Jones petitioners for the post-appeal
period June 1, 2003 to July 15, 2005 (not addressed in this
opinion), reveal an attorney/nonattorney hours ratio of
approximately 5 to 4.[35]  Turning to the reconstructed worksheets

---

[34] Jones's worksheet contains an additional 42 time entries
that do not appear in the paralegals' worksheets.

[35] The nonattorney time for the post-appeal period includes
time charged by a law clerk, an accountant, and an "account

(continued...)

at issue, if we consider only one of the paralegal worksheets, the attorney/paralegal hours ratio becomes 143.87 to 106.25, or approximately 5.5 to 4.  The foregoing comparison, coupled with the questionable nature of the worksheets, prompts us to disregard the duplicate paralegal worksheet claiming 104.25 hours.

### 2.   Specific Time Entries

### a.   In General

Quite apart from the reliability concerns discussed above, the time entries contained in the reconstructed worksheets are woefully nondescriptive.  However, as we did in Dixon IV, we shall give the Jones petitioners the benefit of the doubt here, on the ground that they should not be overly penalized for their counsel's poor documentation efforts.

### b.   Dismissal and Recertification

Respondent urges us to disallow the time Jones (and, by extension, his paralegal) spent on behalf of the Jones petitioners (1) contesting the Court of Appeals' initial dismissal of their applications for interlocutory review, and (2) obtaining this Court's recertification of their cases, describing such efforts as "caused by Jones' own error".  We find respondent's argument somewhat disinguous in light of his appellate attorneys' concurrence (in response to Jones's motion

---

[35](...continued)
manager" as well as paralegal time.

for reconsideration of the Court of Appeals' dismissal) regarding the applicability of the "mailbox rule", under which Jones's initial filing would have been deemed timely without regard to the factual issue of the time of receipt.  See sec. 7502(a); The Manchester Group & Subs. v. Commissioner, 113 F.3d 1087 (9th Cir. 1997), revg. T.C. Memo. 1994-604.  Because it is not at all clear that Jones's efforts on this procedural front were required because of any error by him, we decline respondent's invitation to disregard those efforts altogether.[36]

c.    The Cerasolis' Motion To Intervene

Given the denial by the Court of Appeals of the Cerasolis' motion to intervene in the test case appeal, the hours that Jones and his paralegal devoted to that matter are subject to disallowance under the limited success principle of Hensley v. Eckerhart, 461 U.S. 424 (1983).[37]  See supra Part III.B.2.a.

_____

[36] Respondent objects to one "recertification" time entry (4.0 hours) on the ground that recertification had occurred 5 months prior to the date of the entry.  We assume that the entry is simply misdated, and we allow the time in full.

[37] One could argue that the time Jones devoted to his clients' separate interlocutory appeals should be disallowed as well, since the Court of Appeals effectively rendered those appeals nugatory by putting them on the back burner and ultimately remanding the nontest cases for disposition consistent with the mandate of Dixon V.  We do not hold that view.  Jones pursued those appeals in response to this Court's order certifying the cases of the participating nontest case petitioners for interlocutory appeal.  We issued that order to ensure that the participation rights endorsed by the Court of Appeals in DuFresne v. Commissioner, 26 F.3d 105, 107 (9th Cir. 1994) (per curiam), vacating Dixon v. Commissioner, T.C. Memo.

(continued...)

Moreover, unlike Izen, Jones commenced his intervention efforts well after the Court of Appeals had effectively determined that the interests of the participating nontest case petitioners were adequately represented in the test case appeal.  See supra Part III.C.2.a.  We therefore disallow all of his (and his paralegal's) time relating to the Cerasolis' motion to intervene, amounting to 37.15 hours of attorney time and 14.1 hours of paralegal time.[38]

        d.    <u>Pre- and Post-Appeal Tax Court Filings</u>

The reconstructed worksheets include time entries relating to filings in this Court that both predate (motion for reconsideration of Dixon IV--May 2000) and postdate (status reports--April 30 and May 2003) the period of the appeal.  As those entries are not properly includable in a request for appellate fees, we disallow the corresponding 14.56 hours of attorney time and 10.2 hours of paralegal time.

---

[37](...continued)
1991-614), would not automatically terminate at the Tax Court door.  Consequently, we believe Jones's efforts in that regard are properly compensable.

[38] In their third supplement to the Jones fee request, the Jones petitioners assert that Jones's work on the Cerasolis' motion to intervene "was useful to other counsel as they prepared for oral argument."  Again, we fail to see the beneficial effect. See supra note 25.

e.   Miscellaneous Additional Adjustments

We have identified 10 additional time entries that are either excessive in terms of attorney time or insufficiently related to the appellate proceedings.  The first category includes an 8-hour charge for "Letters to Izen, Binder, O'Donnell, Minns, Sticht" and a 1.5-hour charge for analysis of the Court of Appeals' amended Dixon V opinion, which contained no substantive changes.  Examples from the second category include State-law research for an Alaskan client and a consultation with attorney O'Donnell regarding efforts to reopen previously settled cases in the wake of Dixon V.  The resulting downward adjustments amount to 17.75 hours of attorney time and 6.45 hours of paralegal time.

3.   Summary

The foregoing adjustments, coupled with our rejection of the duplicate paralegal worksheet, amount to 69.46 hours of attorney time and 135 hours of paralegal time.  It follows that Jones and his paralegal reasonably expended 74.41 hours (143.87 - 69.46) and 75.5 hours (210.5 - 135), respectively.

E.   Calculation of Lodestars

1.   Izen Fee Request

a.   2000 and 2001

Izen's time entries for 2000 and 2001 amount to 282.68 hours.  We subtract 139.07 hours from that total to reflect the adjustments discussed above that apply to 2000-2001 time entries.

We then multiply the remaining 143.61 hours by the $140 rate cap in effect for 2000 and 2001 to obtain the lodestar for this period: $20,105.40.

### b. 2002 through 2005

Izen's time entries for 2002 through 2005 amount to 758.19 hours. We subtract 87.325 hours from that total to reflect the adjustments discussed above that apply to 2002-2005 time entries. We then multiply the remaining 670.865 hours by the $150 rate cap in effect from 2002 through 2005 to obtain the lodestar for this period: $100,629.75.

The 758.19 hours claimed for this period include 192.07 fee request hours, and the 88.575 hours disallowed for this period include 53.91 fee request hours.

### c. 2006

Izen's time entries for 2006 amount to 31.16 hours, all of which are fee request hours. Since none of our adjustments relate to 2006, we multiply the full 31.16 hours by the $160 rate cap in effect for 2006 to obtain the lodestar for this period: $4,985.60.

### d. Total

The lodestar with respect to the Izen fee request is $125,720.75 ($20,105.40 + $100,629.75 + $4,985.60). The fees-on-fees lodestar is $25,709.60, calculated as follows: [(192.07 - 53.91) X $150] + $4,985.60 = (138.16 X $150) + $4,985.60 =

($20,724 + $4,985.60) = $25,709.60.  That leaves a "merits fees" lodestar of $100,011.15 ($125,720.75 - $25,709.60).

### 2.  Jones Fee Request

### a.  2000 and 2001

Jones's time entries for 2000 and 2001 amount to 48.41 hours.  We subtract 3.3 hours from that total to reflect the adjustments discussed above that apply to 2000-2001 attorney time entries.  We then multiply the remaining 45.11 hours by the $140 rate cap in effect for 2000 and 2001 to obtain Jones's lodestar for this period:  $6,315.40.

The paralegal time entries for 2000 and 2001 amount to 92 hours.  We subtract 45.2 hours from that total to reflect the adjustments discussed above that apply to 2000-2001 paralegal time entries.  We then multiply the remaining 46.8 hours by the hourly paralegal rate charged by Jones ($125) to obtain the paralegal lodestar for this period:  $5,850.

### b.  2002 and 2003

Jones's time entries for 2002 and 2003 amount to 95.46 hours.  We subtract 66.16 hours from that total to reflect the adjustments discussed above that apply to 2002-2003 attorney time entries.  We then multiply the remaining 29.3 hours by the $150 rate cap in effect for 2002 and 2003 to obtain Jones's lodestar for this period:  $4,395.

The paralegal time entries for 2002 and 2003 amount to 118.5 hours.  We subtract 89.8 hours from that total to reflect the

adjustments discussed above that apply to 2002-2003 paralegal time entries.  We then multiply the remaining 28.7 hours by the hourly paralegal rate charged by Jones ($125) to obtain the paralegal lodestar for this period:  $3,587.50.

        c.    Total

The lodestar with respect to the Jones fee request is $20,147.90 ($6,315.40 + $5,850 + $4,395 + $3,587.50).

    F.    Adjustment to Izen's Fees-on-Fees Lodestar To Reflect Limited Success

In Dixon VII, we reduced our awards of fees-on-fees to account for the limited success achieved by the PH appellants and the Hongsermeiers in pursuing their fee requests.  See, e.g., Thompson v. Gomez, 45 F.3d 1365, 1367 (9th Cir. 1995) ("the legal principles for recovering attorney's fees laid out in Hensley [citation omitted] apply to requests for fees-on-fees"); see also Commissioner, INS v. Jean, 496 U.S. at 163 n.10 (dicta).  The PH appellants had unsuccessfully pursued certain discrete issues relating to their fee request, "thus allowing the limited success factor to be measured by hours devoted to that effort."  Sisk, 56 La. L. Rev. at 119; see supra Part III.B.2.a.  Having lacked that alternative in the case of the Hongsermeiers, we instead compared the number of merits hours allowed to merits hours claimed and applied the resulting "success ratio" to their fees-on-fees lodestar.  See Thompson v. Gomez, supra (applying 87.2-percent success ratio); Harris v. McCarthy, 790 F.2d 753, 758-759 (9th

Cir. 1986) (applying 11.5-percent success ratio).  We take the same approach here with respect to Izen's fees-on-fees lodestar.[39]

The numerator of the Izen petitioners' success ratio (merits hours allowed) is 676.315, and the denominator (merits hours claimed) is 848.8.  See supra Parts III.C.2., III.C.3.  Applying the percentage equivalent (79.68 percent) to Izen's fees-on-fees lodestar of $25,709.60, see supra Part III.E.1.d., yields an adjusted fees-on-fees lodestar of $20,485.41.  The resulting reasonable attorney's fee with respect to the Izen fee request is $120,496.56 (merits fees lodestar of $100,011.15 plus adjusted fees-on-fees lodestar of $20,485.41).

G.    Reasonable Expenses

1.    Izen Expense Request

Two items account for more than 90 percent of the Izen petitioners' claimed expenses of $39,805.19:  The court reporter's fee for the transcript of the 1989 test case trial ($18,000), incurred June 15, 1989, and the court reporter's fee (plus postage) for the transcript of the 1997 evidentiary hearing ($17,840.25), incurred September 29, 1997.  The first transcript fee predates the attorney misconduct phase of this litigation (and presumably was paid by Kersting in any event).  The second

_____

[39] As we did in Dixon VII, we focus on merits hours rather than merits fees because much of the difference between the amounts of merits fees claimed and merits fees allowed is attributable to sec. 7430's rate cap, the effect of which is already reflected in the fees-on-fees lodestar.

transcript fee (plus postage) was included in the fees and costs we considered in Dixon IV.  Accordingly, we disallow both amounts.  We also disallow the following items:  "Initial fee to set up Legal Defense Fund file"--$30; "Set up Legal Authority file"--$30; "Postage/copy charges of letter to Clerk, State Board of Equalization re Dixon appeal and stay"--$1.34; "Postage/copy charges of the rest of the Wayne Young story to all of clients"--$397.76; "Set up Steering committee file"--$30; "Postage/copy charges fee application"--$23.95 (subsumed within the $181.35 postage/copy charge subsequently claimed with respect to the initial filing); difference between aggregate expenses claimed in latest filing and sum of "broken out" amounts--$34.05.  The remaining allowable expenses amount to $3,417.84.

### 2.   Jones Expense Request

The Jones petitioners claim additional expenses of $7,784.70.  We disallow the following items:  (1) Copying and postage for Tax Court filings relating to Dixon III and Dixon IV--$1,204.38; (2) copying and postage for court filings relating to the Cerasolis' motion to intervene in the test case appeal--$554.36; (3) copying and postage for client correspondence predating the period of the appeal--$2,753.84; (4) copying and postage for client correspondence postdating the period of the appeal--$229.68.  The remaining allowable expenses amount to $3,042.44.

H.   Amounts Paid or Incurred by Eligible Persons

1.   Izen Fee Request

a.   Indirect Payments

In his affidavit submitted with the Izen fee request, Izen states:  "From the time of the filing of the Notice of Appeal, June, 2000, until November, 2000, a portion, but not all of my billings for Test Case representation were paid by the Atlas Legal Defense Fund".   However, in response to respondent's subsequent reference to that statement, the Izen petitioners state:

> Respondent is mistaken when Respondent claims that the Atlas Legal Defense Fund paid Izen's fees on appeal for work performed between June, 2000 and November, 2000. The Atlas Legal Defense Fund refused to pay Izen's bill.

Accordingly, we need not concern ourselves, as we did in Dixon VII, with indirect payments by eligible persons through the Defense Fund.

b.   Indirect Obligations

In Dixon VII, we concluded that three members of the Defense Fund's steering committee, all nontest case petitioners, were liable for the Defense Fund's obligations to Porter & Hedges under the terms of the Fund's retainer agreement with that firm. In contrast, the Izen petitioners have failed to produce any contract between Izen and the Defense Fund for the provision of appellate legal services, let alone any agreement on the part of individual nontest case petitioners to accept personal liability

thereunder.[40]  Although Izen has attempted, through litigation, to establish the liability of four steering committee members (all nontest case petitioners) to pay for a portion of his appellate services, those efforts have thus far proved unsuccessful.  We therefore have no basis for finding any individual payment obligations vis-a-vis the Defense Fund.

c.  Direct Payments

In their second supplement to the Izen fee request, the Izen petitioners submitted a list of "payments on appeal" made to Izen by 19 nontest case petitioners.  As discussed below, the Izen petitioners have also submitted (or established the existence of) individual contracts for appellate legal services between Izen and 15 of the listed payors.  Since none of those 15 payors is credited with having made "payments on appeal" in excess of his contractual obligation (the latter amount independently satisfying the "paid or incurred" requirement), we focus on the four remaining listed payors.  We further narrow our focus to the three remaining payors out of that group for whom we have received net worth affidavits.

In our May 10, 2006 order, we indicated that, if the Izen petitioners were unable to establish a payor's fixed contractual obligation to pay for Izen's appellate services, we would assume

--------

[40] As indicated above, Izen's initial agreement to provide legal services in this litigation was with Kersting, not the Defense Fund as reconstituted after Kersting's death in March 2000.

that payments made by that person after the period of the appeal were intended to compensate Izen for representation in the ensuing remand proceedings in this Court.  Since most of the additional Izen contracts we have received relating to those remand proceedings call for monthly payments beginning March 1, 2003, we shall deem the period of the appeal to have ended February 28, 2003, for these purposes (rather than the January 17, 2003, issue date of Dixon V).  Under that convention, the three remaining listed payors who are eligible persons made payments to Izen for appellate services in the aggregate amount of $4,600.

### d.    Direct Obligations--Fixed Amounts

The Izen petitioners have submitted (or established the existence of) individual contracts for appellate legal services between Izen and 17 nontest case petitioners,[41] as well as net worth affidavits for 16 of those petitioners.  All but one of the contracts require payments of $4,800 (the other calls for payments of $2,400).  Thus, the aggregate fixed payment obligation of the 16 eligible persons is $74,400 [(15 X $4,800) + $2,400 = $72,000 + $2,400 = $74,400].

---

[41] Two of those 17 nontest case petitioners apparently did not make any "payments on appeal".

  e.   Direct Obligations--Additional Amounts

At first blush, it would appear that the amount potentially

recoverable with respect to the Izen fee request (reasonable

attorney's fee of $120,496.56 plus reasonable expenses of

$3,417.84 equals $123,914.40) far exceeds the amount paid or

incurred by eligible persons ($4,600 + $74,400 = $79,000).  That

is not the end of the story, however.  On the basis of the

authority discussed below, we construe the Izen appellate

contracts as creating additional payment obligations that

eliminate the apparent shortfall.

In Phillips v. GSA, 924 F.2d 1577 (Fed. Cir. 1991), the

Court of Appeals awarded Ms. Phillips more than $9,000 in

attorney's fees under the EAJA (which similarly limits awards to

amounts "incurred"), even though her attorney had agreed to

prosecute her appeal for a flat fee of $2,500.  In an affidavit

submitted with the fee application (and quoted by the Court of

Appeals), the attorney described the fee arrangement as follows:

> "She was to pay me $2500 of her back pay for the appeal
> and I was to charge her no more.  The recovery would
> then be contingent upon success, recovery to be based
> upon a statutory fee award if we prevailed.  We kept
> bookkeeping entries of my time, but once the $2500 was
> paid by the client, she was not responsible for further
> payment of our charges * * * "  [Id. at 1582.]

The Government argued that Ms. Phillips's fee award should be

limited to $2,500, "because that is all she has paid, or is

obligated to pay, to her attorney."  Id.  The Court of Appeals,

noting that the EAJA provides for an award "to the 'prevailing

party'" rather than to the attorney,[42] construed the fee

arrangement

> to mean that if an award of attorney fees is obtained
> on her behalf she is obligated to turn it over to her
> attorney.  In this sense, Phillips incurs the attorney
> fees that may be awarded to her.  On the other hand, if
> no fee award is made to her, she does not have any
> obligation to pay any further fees to her attorney from
> her own resources. * * *  [Id. at 1582-1583.]

See also Sisk, 55 La. L. Rev. at 348-349 (adopting Professor

Silver's argument that such an arrangement is the economic

equivalent of a nonrecourse debt and concluding that the EAJA's

"incurred" requirement should be deemed satisfied thereby);

Silver, "Unloading the Lodestar:  Toward a New Fee Award

Procedure," 70 Tex. L. Rev. 865, 881-886 (1992).

In affidavits submitted with the Izen petitioners' third

supplement to their fee request, Izen's clients describe a

billing arrangement similar to that depicted in Phillips v. GSA,

supra.  Specifically, each affiant states:

> 6.   It was also my/our understanding that he
> [Izen] could seek the full value of his services when
> he applied for fees and that we would not be
> responsible for any fees in excess of our payments
> under our contract(s).
>
> 7.   I/we agreed that we would be reimbursed any
> money we had paid Mr. Izen out of any recovery he
> received and that he would keep the difference, if any,

---

[42] Sec. 7430(a) similarly provides that "the prevailing party may be awarded" the costs specified therein.  See also Evans v. Jeff D., 475 U.S. 717, 730-732 (1986) (fee award under CRAFAA, which provides that a court "may allow the prevailing party * * * a reasonable attorney's fee", belongs to the prevailing party rather than the attorney).

> between the amounts we had paid him and the reasonable fees he was awarded by the Court.

Those representations are consistent with the inclusion of Izen's hourly billing rate in his flat-fee appellate contracts. We therefore conclude that each such contract encompasses an "implied agreement that * * * [any] fee award will be paid over to the legal representative", id. at 1583, to the extent the client's share of the award exceeds the amount paid by the client pursuant to the contract. In this manner, the contracts supply the additional payment obligations that support an award of the potentially recoverable amount in its entirety.

## 2. Jones Fee Request

As indicated above, the Jones petitioners actually base the amount of their fee request ($133,136.50) on the aggregate payments received by Jones from his nontest case petitioner clients between August 16, 1999 and May 27, 2003. Disregarding (1) amounts received prior to the period of the appeal, (2) amounts received from persons for whom the Jones petitioners have not submitted net worth affidavits, and (3) amounts received from persons who had settled their cases prior to the appeal, the remaining amount (in excess of $84,000) still far exceeds the reasonable fees ($20,147.90) and expenses ($3,042.44) with respect to the Jones fee request. Accordingly, we conclude that eligible persons have paid the potentially recoverable amount ($23,190.34) in its entirety.

I.   <u>Summary</u>

We shall award attorney's fees and expenses in the amount of $123,914.40 in respect of the Izen fee request and $23,190.34 in respect of the Jones fee request.[43]  We shall address the manner in which the awards are to be administered in a separate order or orders implementing this opinion.

To reflect the foregoing,

<u>Appropriate orders will be issued</u>.

---

[43] It turns out that the Izen fee award is the smallest of the three fee awards we have granted that are premised on actual participation in the briefing and argument of the test case appeal.  In Dixon VII, we posited a "range of reasonableness" with regard to the number of hours properly devoted to the core aspects of the test case appeal, with Izen occupying the low end of that range.  See <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-97 at Part III.C.1.b.  It is not surprising that the attorneys who joined the fray at a later stage--who did not participate in the Dixon II trial of the test cases or the Dixon III evidentiary hearing--would have spent more startup time than Izen in order to familiarize themselves with the records of the trial and hearing that he was instrumental in creating.  Nor is it surprising that Porter & Hedges, which had the most available resources and the least amount of time to deploy them, would come in on the high end of the range (even after application of a 130-hour haircut). Suffice it to say that the variances in the amounts of the three awards should not be interpreted as a judgment on our part regarding the relative quality and effectiveness of the underlying appellate representations.

Appendix  -  September 8, 2005 Order

UNITED STATES TAX COURT
Washington, D.C.  20217

JERRY DIXON AND PATRICIA A. DIXON,  )    Docket Nos.  9382-83
ET. AL.,                             )                 17646-83
                                     )                 15907-84
                                     )                 40159-84
         Petitioners                 )                 22783-85
                                     )                 30979-85
     v.                              )                 29643-86
                                     )                 19464-92
COMMISSIONER OF INTERNAL REVENUE,    )                   621-94
                                     )                  9532-94
         Respondent.                 )

O R D E R

On March 30, 1999, the Court issued its Supplemental Memorandum Findings of Fact and Opinion, Dixon v. Commissioner, T.C. Memo. 1999-101 (Dixon III), and entered decisions in Docket Nos. 9382-83, 15907-84, 40159-84, 30979-85, 29643-86, and 22783-85 (the test cases).  In Dixon III, we held that the misconduct of the Government attorneys in the trial of the test cases did not constitute a structural defect in the trial but rather resulted in harmless error.  We did, however, impose sanctions against respondent in the form of interest reductions.

On June 24, 1999, petitioners in the captioned cases moved for attorneys' fees and expenses relating to services provided by Joe Alfred Izen, Jr. and Robert Alan Jones (the initial fee requests).  The initial fee requests relied in part on sections 6673 and 7430.[1]  The Court vacated the decisions in the test cases and ordered the movants to submit documentation pertaining to fees and expenses incurred commencing on June 10, 1992.[2]

On March 31, 2000, the Court issued its Supplemental Memorandum Opinion, Dixon v. Commissioner, T.C. Memo. 2000-116 (Dixon IV), and entered decisions in the test cases reflecting the Dixon III and Dixon IV opinions.  In Dixon IV, we rejected the initial fee requests insofar as they relied on section 7430, on the ground that the movants had not substantially prevailed

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] June 10, 1992 is the date on which the Court granted leave and filed respondent's motions to vacate the decisions in Cravens v. Commissioner, Docket Nos. 16900-83 and 15135-84, and Thompson v. Commissioner, Docket Nos. 19321-83, 31236-84, and 30965-85.

SERVED SEP 9 2005

within the meaning of section 7430(c)(4)(A)(i). We did, however, award a portion of the claimed fees and expenses under section 6673(a)(2).[3]

Petitioners in the test cases appealed our decisions to the United States Court of Appeals for the Ninth Circuit (the appeals). The Court of Appeals reversed and remanded, holding that the misconduct of the Government attorneys in the trial of the test cases amounted to fraud on the court. See Dixon v. Commissioner, 316 F.3d 1041 (9th Cir. 2003) (Dixon V).

On May 19, 2005, petitioners in Docket No. 22783-85 moved for attorneys' fees and expenses relating to services provided by Mr. Izen in connection with the appeals.[4] On July 15, 2005, petitioners in Docket Nos. 17646-83, 19464-92, 621-94, and 9532-94 moved for attorneys' fees and expenses relating to services provided by Mr. Jones in connection with the appeals. The Izen and Jones appellate fee requests rely exclusively on section 6673.

Section 6673 vs. Section 7430

In Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990), the Supreme Court held that a district court may not include in a Rule 11 sanction the amount of fees incurred defending the award on appeal.[5] The Court began by observing that "[o]n its face, Rule 11 does not apply to appellate proceedings." Id. at 406. Moreover, the reference in Rule 11 (as then in effect) to fees and expenses incurred "because of" the offending filing did not extend its reach:

> In this case, respondents argue, they would have
> incurred none of their appellate expenses had
> petitioner's lawsuit not been filed. This line of
> reasoning would lead to the conclusion that expenses
> incurred "because of" a baseless filing extend

---

[3] Our award would not have been any more generous had we proceeded under section 7430 or any other theory of recovery.

[4] Petitioners in Docket Nos. 9382-83, 15907-84, 40159-84, 30979-85, and 29643-86 terminated their representation by Mr. Izen shortly after the commencement of the appellate process and therefore did not join in the motion. See infra note 14.

[5] The Court noted that the Court of Appeals for the Ninth Circuit had adopted that view in Orange Production Credit Assn. v. Frontline Ventures Ltd., 801 F.2d 1581 (9th Cir. 1986). 496 U.S. at 405-406.

> indefinitely. * * * Such an interpretation of the Rule
> is overbroad. Rule 11 is more sensibly understood as
> permitting an award only of those expenses directly
> caused by the filing, logically, those at the trial
> level. * * * If the district court imposes Rule 11
> sanctions on the plaintiff, and the plaintiff appeals,
> the expenses incurred in defending the award on appeal
> are directly caused by the district court's sanction
> and the appeal of that sanction, not by the plaintiff's
> initial filing in district court.

Id. at 406-407.[6] The Court went on to distinguish between fee awards imposed as sanctions and those granted under "fee-shifting" statutes designed to encourage private parties to vindicate their rights:[7] "As Rule 11 is not a fee-shifting statute, the policies for allowing district courts to require the losing party to pay appellate, as well as district court attorney's fees, are not applicable." Id. at 409.

We believe the reasoning of Cooter & Gell v. Hartmarx Corp., supra, precludes us from awarding appellate fees and expenses under section 6673. As is the case with Rule 11, section 6673(a) (on which the present movants rely) does not, on its face, apply to appellate proceedings.[8] Under the reasoning of Cooter & Gell, the reference in section 6673(a)(2) to fees and expenses incurred "because of" the sanctionable conduct does not extend the reach of the statute beyond Tax Court proceedings. Rather, any fee award under section 6673 (which, like Rule 11, is not a fee-shifting statute)[9] is properly limited to fees and expenses

---

[6] Rule 11 has since been amended to refer to fees and expenses incurred "as a direct result of" the violation. Fed. R. Civ. P. 11(c)(2).

[7] See Commissioner, INS v. Jean, 496 U.S. 154, 164-165 (1990) (describing the purpose of the Equal Access to Justice Act, the fee-shifting statute from which sec. 7430 derives).

[8] Indeed, the heading of sec. 6673(a) is "Tax Court Proceedings", while the heading of sec. 6673(b) is "Proceedings in Other Courts".

[9] That is, the applicability of sec. 6673 "depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." Chambers v. NASCO, Inc., 501 U.S. 32, 53 (1991) (discussing the "bad faith" exception to the so-called American rule, the rule that generally prohibits Federal courts from awarding attorneys' fees in the absence of a statutory or contractual provision to the contrary).

- 4 -

directly caused by the sanctionable conduct. To paraphrase the Supreme Court, the appellate fees and expenses at issue were directly caused by this Court's rulings in Dixon III, not by the attorney misconduct that occasioned the proceedings underlying that opinion.[10]

The Court of Appeals for the Ninth Circuit has applied Cooter & Gell's "direct causation" approach outside the context of Rule 11 on at least two occasions. See Lockary v. Kayfetz, 974 F.2d 1166, 1178 (9th Cir. 1992) (fees awarded under district court's inherent authority to impose sanctions; "Cooter & Gell suggests that the trial court should limit sanctions to the opposing party's more 'direct' costs", which do not include the costs of preparing the motion);[11] Lyddon v. Geothermal Properties, Inc., 996 F.2d 212, 214 (9th Cir. 1992) (citing Lockary and its reliance on Cooter & Gell, court concludes that fee award under Fed. R. App. Proc. 38 for frivolous appeal should not include the costs associated with computing the amount of the award on remand). See also Manion v. American Airlines, 395 F.3d 428, 433 (D.C. Cir. 2004) (fee award under 28 U.S.C. § 1927 does not properly include the cost of defending the award on appeal; "much of [Cooter & Gell's] rationale applies with equal force in the § 1927 context").[12]

---

[10] We recognize that, in Dixon IV, we awarded fees and expenses under sec. 6673 without distinguishing between trial and appellate proceedings. Under the reasoning of Cooter & Gell, the appellate fees and expenses included in the initial fee requests were directly caused by this Court's initial refusal to conduct an evidentiary hearing regarding the effect of the attorney misconduct on the trial of the test cases, not the attorney misconduct itself. Because we did not explicitly address the propriety of awarding appellate fees and expenses under sec. 6673 in Dixon IV, we do not consider ourselves bound by the law of the case doctrine to evaluate the Izen and Jones appellate fee requests under sec. 6673.

[11] Although Lockary v. Kayfetz did not involve Rule 11 sanctions, we note that Rule 11 now explicitly authorizes the awarding of fees and expenses incurred in "presenting or opposing" the motion for sanctions. Fed. R. Civ. P. 11(c)(1)(A).

[12] 28 U.S.C. § 1927, from which sec. 6673 derives, provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses,

- 5 -

By contrast, a fee award under a fee-shifting statute such as section 7430 generally encompasses all aspects of the litigation. See <u>Commissioner, INS v. Jean</u>, 496 U.S. 154, 161-162 (1990) (while "[a]ny given civil action can have numerous phases", "the [Equal Access to Justice Act]--like other fee-shifting statutes--favors treating a case as an inclusive whole"; accordingly, fees incurred in obtaining an EAJA fee award are recoverable regardless of the Government's reasonableness in contesting the fee award). As noted above, the initial fee requests relied in part on section 7430, a position we rejected in Dixon IV on the ground that the movants had not substantially prevailed. In light of the test case petitioners' subsequent appellate victory, and in order to give effect to <u>Jean</u>'s mandate to "[treat] a case as an inclusive whole" in applying fee-shifting statutes, we shall treat the present movants as having revived their section 7430 claims by means of the Izen and Jones appellate fee requests.[13]

Net Worth Requirement

For purposes of section 7430, a "prevailing party" must meet the net worth requirement of 28 U.S.C. § 2412(d)(2)(B) (as in effect on October 22, 1986). Sec. 7430(c)(4)(A)(ii). Rule 231(b)(4) requires the submission of the moving party's affidavit to that effect. Although the initial fee requests relied in part on section 7430, neither included any such net worth affidavits. Furthermore, the Court has determined that the real parties in interest with respect to the Izen and Jones appellate fee requests include not only the present movants but all persons who stand to benefit from the successful prosecution of those requests (i.e., those individuals who have made payments of the requested appellate fees and expenses to Mr. Izen--directly or through contributions to the Atlas Legal Defense Fund--or Mr. Jones or are otherwise liable for any portion of the requested appellate fees and expenses). The Court cannot rule on the Izen

and attorneys' fees reasonably incurred because of such conduct.

[13] <u>Jean</u> arguably dictates that, in evaluating the Izen and Jones appellate fee requests under sec. 7430, we determine prevailing party and substantial justification issues in terms of the underlying deficiency litigation. Because the test case proceedings relating to the underlying deficiencies and the subsequent proceedings relating to attorney misconduct involved fundamentally different facts and issues, we believe we are justified in treating the attorney misconduct phase of the litigation as a separate proceeding for these purposes.

- 6 -

and Jones appellate fee requests without knowing how many of those real parties in interest satisfy the net worth requirement.

Premises considered, it is

ORDERED that, to the extent applicable, the present movants (petitioners in Docket Nos. 22783-85, 17646-83, 19464-92, 621-94, and 9532-94) shall submit to the Court by October 28, 2005 the affidavit of each real party in interest (as described above) that his or her net worth as of June 10, 1992 did not exceed $2,000,000.[14]  It is further

ORDERED that, on or before October 28, 2005, respondent shall file separate responses to the Izen and Jones appellate fee requests consistent with this Order (i.e., by treating the requests as supplementing the initial fee requests under section 7430).  It is further

ORDERED that, in addition to counsel for petitioners in the captioned cases and counsel for respondent, a copy of this order shall be served upon:

Declan J. O'Donnell, Esq.
499 S. Larkspur Drive
Castle Rock, CO  80104

Robert Patrick Sticht, Esq.
P.O. Box 49457
Los Angeles, CA  90049

Renato Beghe
Judge

Dated: Washington, D.C.
       September 8, 2005

--------

[14] By Order dated September 1, 2005, we ordered counsel for petitioners in Docket Nos. 9382-83, 15907-84, 40159-84, 30979-85, and 29643-86 to perform a similar exercise with respect to their appellate fee requests.  All counsel are encouraged to coordinate their efforts in this regard so that individuals who are real parties in interest with respect to more than one appellate fee request are not faced with multiple requests for net worth affidavits.  Counsel shall provide each other with copies of any such "overlapping" net worth affidavits for inclusion in their respective submissions to the Court, as applicable.